## STATE FARM FIRE AND CASUALTY COMPANY

### V.

## WANDA SCOTT, ET AL.

Record No. 860185

September 23, 1988

Present: All the Justices

*John W. Zunka; James W. Morris, III (Jane P. Long; John M. Claytor; Carrie L. Camp; Taylor & Zunka; Browder, Russell, Morris & Butcher*, on briefs), for appellant.

*Terence M. Bagley (John M. Oakey, Jr.; Jon A. Mueller; Bruce D. Rasmussen; Elizabeth P. Coughter; Charles F. Purcell; McGuire, Woods & Battle; Michie, Hamlett, Donato & Lowry; Purcell & Purcell*, on briefs), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

In this appeal, an insurer claims that the trial court erred (1) in refusing to hold as a matter of law that an insured had failed to give the insurer notice of an accident as soon as practicable; (2) in excluding from evidence an out-of-court statement made by the insured to the insurer's agent; and (3) in requiring the insurer to pay attorneys' fees incurred by an injured party's uninsured motorist carrier.

I

On May 22, 1982, Wanda Scott was injured in a single-vehicle accident. At the time, she was a passenger in a motor vehicle owned by Max Delano Turner (Turner) and operated by Alton Coleman Williams, III. Turner's motor vehicle was insured under a standard automobile liability policy issued by State Farm Fire and Casualty Company (State Farm).

Scott sued Williams to recover damages for her injuries. State Farm denied coverage, claiming that Williams was not a permissive user of the vehicle and that timely notice of the accident had not been given. Consequently, Royal Insurance Company of America (Royal), Scott's uninsured motorist carrier, defended the suit. Scott obtained a judgment against Williams for $31,500, and Royal paid Scott $25,000, the limit of its coverage.

Because State Farm had denied coverage and refused to defend Scott's suit against Williams, Scott and Royal instituted the present action against State Farm. Scott sought recovery of the balance of her judgment in excess of Royal's coverage limit. Royal, by way of subrogation, sought recovery of the $25,000 it had paid Scott and the attorneys' fees it had incurred defending Scott's tort action. Both plaintiffs alleged that State Farm had breached its insurance contract.

The present case was tried to a jury that returned verdicts for Scott and Royal. Scott was awarded $8,060 as compensatory damages, and Royal was awarded $25,127.50, with interest. Royal also was awarded $5,715.15, with interest, for attorneys' fees and costs it had incurred in the defense of Scott's tort claim.[1] The trial court entered judgment for Scott and Royal, and State Farm appeals.

---

[1] Scott also was awarded punitive damages in the amount of $150,000. The trial court set aside the punitive damages, and that ruling is not an issue in this appeal.

## II

First, State Farm contends that the trial court erred in failing to hold as a matter of law that it did not receive timely notice of the accident as required by the policy it had issued to Turner. The notice provision of the policy, in pertinent part, provides as follows:

In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

Notice of the May 22, 1982 accident was received by State Farm on August 5, 1982. On that date, Ron Burton, a State Farm agent, began investigating the accident.

On August 20, 1982, Burton obtained detailed statements concerning the accident from Turner and Turner's daughter, Shari Turner (Shari). Burton interviewed Todd McKinney on August 23, 1982. Shari and McKinney were also passengers in Turner's vehicle when the accident occurred.

After obtaining these statements, Burton recommended to State Farm that it deny coverage on the basis of Williams' lack of permission to operate Turner's vehicle. Consequently, State Farm denied coverage. State Farm also obtained from Turner a nonwaiver of rights based upon the alleged untimely notice.[2] Pursuant to former Code § 38.1-389.1 (now Code § 38.2-2226), State Farm notified Scott of its intention to rely upon the breach-of-notice defense.

State Farm's internal records indicated, however, that the timeliness of the notice was not a problem. In August 1982, Burton advised State Farm's claim committee as follows:

Regarding the late notice, I suggest we waive the claim committee and continue to handle the claim because we have

---

[2] The record discloses that State Farm also handled the claims of Turner and Shari under reservations of rights, asserting that the notice provision in the policy had been violated. Subsequently, however, State Farm paid these claims, thereby relinquishing its right to assert a late-notice defense as to them.

not been prejudiced in our investigation. I realize showing prejudice is not necessary to deny coverage for late notice, as notice is a condition precedent to coverage. [The named insured] was ten weeks late in reporting the loss to us.

The trial court, over State Farm's objection, submitted to the jury the issue of late notice. Without waiving its contention that the issue was one of law, State Farm tendered and the trial court granted the following jury instruction:

If you find by the greater weight of the evidence that notice of the loss was not given by Max Turner to the defendant State Farm within a reasonable time under all the circumstances, then you shall find your verdict for the defendant State Farm.

Thus, by its verdict, the jury found that the notice was timely, and the trial court approved the verdict.

■ Performance of the notice provision of an automobile liability insurance policy is a condition precedent to coverage, "requiring substantial compliance by the insured." *State Farm v. Porter*, 221 Va. 592, 599, 272 S.E.2d 196, 200 (1980). *Accord Lord v. State Farm*, 224 Va. 283, 284, 295 S.E.2d 796, 797 (1982); *Liberty Mut. Ins. v. Safeco Ins.*, 223 Va. 317, 323, 288 S.E.2d 469, 473 (1982). Generally, whether notice has been given to the insurer "as soon as practicable" is an issue to be resolved by a fact finder. *Lord*, 224 Va. at 284, 295 S.E.2d at 797; *Safeco Ins.*, 223 Va. at 323, 288 S.E.2d at 473; *Porter*, 221 Va. at 597, 272 S.E.2d at 199. The requirement that notice be given "as soon as practicable" means that it must be given within a reasonable time after the accident, and what constitutes a reasonable time depends upon the facts and circumstances of each case. *State Farm Mutual v. Douglas*, 207 Va. 265, 267, 148 S.E.2d 775, 777 (1966); *Mason and Dixon, Inc. v. Casualty Co.*, 199 Va. 221, 224-25, 98 S.E.2d 702, 704-05 (1957).

■ When a violation of the notice requirement is substantial and material, the insurer is not required to show that it has been prejudiced by the violation. *Lord*, 224 Va. at 284, 295 S.E.2d at 797; *Safeco Ins.*, 223 Va. at 323, 288 S.E.2d at 473. An absence of prejudice, however, is a "circumstance to be considered on the question of the materiality of the information which it is claimed the insured failed to give." *Shipp v. Connecticut Indem. Co.*, 194

Va. 249, 256, 72 S.E.2d 343, 347 (1952). *Accord Porter*, 221 Va. at 597, 272 S.E.2d at 199.

In the present case, State Farm relies upon *Lord* and *Safeco Ins.*, contending that those cases held as a matter of law that the notice was untimely. State Farm misreads our holdings in those cases.

In *Lord*, notice was delayed 173 days after the accident. The fact finder (the trial court sitting without a jury) found that the delay was without sufficient justification. We affirmed the judgment, merely concluding that the evidence supported that finding. 224 Va. at 288, 295 S.E.2d at 799-800.

Similarly, in *Safeco Ins.*, the trial court, sitting without a jury, found that a 51-day delay between the accident date and the date of notice was a breach of the requirement that notice be given "as soon as practicable." In affirming the trial court, we said that the issue was "whether the trial court's implicit holding that the notice was untimely is supported by credible evidence." 223 Va. at 324, 288 S.E.2d at 473.

State Farm also relies upon *Porter*. In that case, we did reverse a trial court, sitting without a jury, that had found that the insurer had not been prejudiced by noncompliance with the notice requirement. In *Porter*, however, no notice was ever given. Indeed, the record showed that "rather than substantial compliance there was wilful violation" of the notice provision. 221 Va. at 599, 272 S.E.2d at 200. Thus, *Porter*, is inapposite.

In the present case, the issue whether notice was given within a reasonable time after the accident was a question to be resolved by the fact finder based upon all the facts and circumstances. Thus, the trial court properly submitted the issue to the jury.

### III

At trial, State Farm sought to introduce, through Burton's testimony, an out-of-court statement allegedly made by Turner to Burton. According to Burton's proffered testimony, Turner, a nonparty, told him that the occupants of Turner's vehicle had agreed to pay Turner for the damage to the vehicle if Turner would agree not to report the accident to State Farm. The trial court sustained the hearsay objections raised by Scott and Royal and excluded the testimony. State Farm assigns error to the ruling.

■ We have defined hearsay evidence as "testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." *Stevenson* v. *Commonwealth*, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977) (quoting E. Cleary, *McCormick's Handbook of the Law of Evidence* § 246, at 584 (2d ed. 1972)). We conclude that Turner's alleged statement falls within this definition. Turner's out-of-court statement was offered to prove the truth of the matter asserted, *i.e.*, that Turner had agreed not to report the accident. Clearly, this was inadmissible hearsay, and the trial court properly excluded it.

## IV

Finally, State Farm contends that the trial court erred in awarding attorneys' fees to Royal. The court approved an award of $5,715.15 for attorneys' fees incurred by Royal in defending Scott's tort action against Williams.

■ Generally, absent a statutory or contractual provision to the contrary, attorneys' fees may not be recovered by a prevailing litigant as an item of damages in an action *ex contractu. Gilmore* v. *Basic Industries*, 233 Va. 485, 490, 357 S.E.2d 514, 517 (1987); *Norris* v. *Barbour*, 188 Va. 723, 741-42, 51 S.E.2d 334, 342 (1949). We have recognized an exception to the general rule in actions for breach of contract where the breach compels a plaintiff to maintain or defend a suit with a third party. *Hiss* v. *Friedberg*, 201 Va. 572, 577, 112 S.E.2d 871, 875-76 (1960). In *Hiss*, the Friedbergs were forced to bring suit against a third party as a direct and necessary consequence of Hiss' having breached his contract with the Friedbergs. Thereafter, the Friedbergs sued Hiss for breach of contract, claiming, as an item of damages, the attorneys' fees the Friedbergs had incurred in the suit against the third party. We held that the Friedbergs were entitled to recover the fees.

Royal asks us to apply the *Hiss* exception in the present case. We decline to do so. In the case at bar, Royal, unlike the Friedbergs, was not a party to the contract with State Farm. There was no contract, express or implied, between State Farm and Royal that obligated Royal to defend Williams.

Royal's obligation arose out of its contract with its insured, Scott. Royal's subrogation rights are set forth in former Code

§ 38.1-381(f) (now Code § 38.2-2206(G)), which provides in pertinent part:

> Any insurer paying a claim under the endorsement or provisions required by [the Uninsured Motorist Law] shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage and such person's insurer, notwithstanding that it may deny coverage for any reason, *to the extent that payment was made*; . . . .

(Emphasis added.)

Thus, as Scott's subrogee, Royal was entitled to recover only such sum as it had paid to Scott. Former Code § 38.1-381(f) makes no provision for attorneys' fees.

Royal nevertheless argues that it need not have contractual privity with State Farm to recover attorneys' fees because State Farm was the primary insurer here and Royal was the secondary insurer as the uninsured motorist carrier. Royal relies upon *American Motorists Ins. Co. v. Kaplan*, 209 Va. 53, 161 S.E.2d 675 (1968), and *Hardware Mutual v. Celina Mutual*, 209 Va. 60, 161 S.E.2d 680 (1968).

■ We think Royal's reliance is misplaced. Both *American Motorists* and *Hardware* stand for the proposition that "escape" or "no liability" clauses in insurance policies are void as contrary to former Code § 38.1-381. In each of those cases, we permitted the secondary carrier to recover attorneys' fees from the primary insurer because the latter had relied upon the unlawful clause to escape both its duty to defend and its liability. Moreover, each of the secondary carriers owed a duty to defend the party who had been denied coverage by the primary insurer. Clearly, *American Motorists* and *Hardware* are inapposite to the facts of the present case. Here, Royal, as the uninsured motorist carrier, did not owe Williams any duty of defense.

■ We conclude, therefore, that the trial court was not authorized by either statute or contract to award attorneys' fees to Royal. Whether a court should have the authority to award attorneys' fees in a case such as this is a determination best left to the General Assembly. Accordingly, we hold that the award of attorneys' fees was error.

## V

In conclusion, we will affirm the trial court's judgment as it relates to the issue of timely notice and the evidentiary ruling, but reverse the judgment as it relates to attorneys' fees. Thus, we will affirm the judgment in favor of Scott. We, however, will modify the judgment in favor of Royal by subtracting $5,715.15, the amount of the attorneys' fees, and affirm Royal's judgment as modified.

*Modified and affirmed.*