United States Court of Appeals,

Fifth Circuit.

No. 91–3827.

PEAVEY COMPANY, Plaintiff,

v.

M/V ANPA, in rem, et al., Defendants.

DEGESCH AMERICA, INC., Defendant in Cross Claim—Appellee Plaintiff in Counter Claim,

v.

ZURICH INSURANCE COMPANY, Plaintiff in Cross Claim—Appellant Defendant in Counter Claim.

Sept. 14, 1992.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before BROWN, KING and WIENER, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

## Where We Are Now

Zurich Insurance Co. appeals a judgment in favor of Degesch America, Inc. for failure of Degesch, the insured, to furnish timely notice of the occurrence. 773 F.Supp. 832. Applying Louisiana law, we agree with the District Court that Zurich was not prejudiced by Degesch's untimely notice of its claim and, alternatively, that Zurich has waived its right to raise any defense of noncoverage. We concur with the District Court that Zurich is obligated to pay the coverage fees and outstanding attorney's fees. We do not, however, agree with the District Court that Zurich's suit is against public policy and thereby find that Zurich should not be penalized. We therefore affirm in part and reverse in part.

## Where It All Began

On March 12, 1989, the M/V ANPA, while down-bound on the Mississippi River, lost

electrical power and struck the Nashville Avenue Wharf in New Orleans, Louisiana.[1]  The allision

caused damage to the wharf, the vessel and its wheat cargo.  ANPA claimed that the power loss

resulted from its temporary cargo fumigation system installed by Degesch America, Inc.[2]

Five days following, on March 17, 1989, the ANPA's owners informed Degesch that they

intended to hold Degesch fully responsible for the allision and all resulting damages.  Upon being

notified, Degesch took certain actions to discover the exact nature of the allision.  It retained Ralph

E. Smith of Deutsch, Kerrigan & Stiles as counsel and experts who conducted investigations.  But

it failed to give notice of any kind to Zurich, its insurer, of the occurrence.  During the five days

between the allision and the notice to Degesch, other events had occurred:  (i) the cargo from the

ANPA's hold was discharged;  (ii) surveys were conducted by the representatives of the ANPA and

the wharf;  and (iii) neither Degesch nor Zurich was notified of these surveys or invited to participate.

The ANPA remained in New Orleans undergoing repairs.  On April 20, 1989, the vessel sailed from

the Port of New Orleans and was never seen in New Orleans again.  The ANPA was sold by Seaport

to Beogradska Polividba, an agency of the government of Yugoslavia.

On January 2, 1990, Zurich's claim representative in Dallas finally was notified of the matter.[3]

---

[1]The course of events leading to the allision was as tortious as the course of this tort case.  On March 12, 1989, the M/V ANPA, with a load full of grain, got underway from the Peavey Elevator at 9:09 AM.  At 12:30 PM, as it approached Six Mile Point, the vessel lost electrical power to the lights and navigation control systems and the main engine tripped off line.  In an attempt to avoid colliding into other river traffic in the ANPA's vicinity, Pilot Captain Hugh Stanely Hathorn ordered hard port rudder and then hard starboard.  However his orders were to no avail because the steering was out.  At about 12:40 PM, with the vessel out of control, the pilot ordered to let go the starboard anchor.  This last attempt did nothing to slow the vessel down.  Instead it crossed the channel to the left bank and approached the Nashville Street Wharf.  At 12:50 PM, the ANPA, missing other vessels in its path, struck the Nashville Street Wharf head-on.

[2]Degesch America, Inc. was employed by the Peavey Company to install an in-transit fumigation system for the wheat cargo.

[3]On December 12, 1989, Degesch informed its insurance broker, Marsh & McLennan in Richmond, Virginia of the occurrence.  Shortly thereafter, Marsh & McLennan reported the events to Zurich's underwriting agent.  Finally on January 2, 1990, Zurich's claim representative learned of the matter.

After obtaining and reviewing Degesch's investigative reports, he concluded that no other actions were necessary pending further developments.

On March 9, 1990, Exportkhleb[4] filed suit against ANPA, Seaport Shipping, Transmed Shipping, Degesch, and ABC Insurance Co.[5] Degesch informed Zurich of the suit on March 12, 1990. On March 26, 1990, instead of reserving its rights or raising any question about compliance with policy terms, Zurich assigned the case to Ralph Smith of Deutsch, Kerrigan & Stiles, who initially was Degesch's counsel, thereby retaining Ralph Smith as its own counsel. It was not until May 29, 1990 that Zurich finally issued a reservation of rights letter to Degesch, claiming a late notice defense. In the meantime, Ralph Smith continued to act as counsel for Degesch and Zurich.

Smith answered Exportkhleb's complaint although he knew about the reservation of rights defense. As before, Smith continued to act as counsel for Zurich, until November 8, 1990 when Zurich finally filed a motion to substitute counsel.

In a consolidated proceeding, Zurich reached a settlement with all the parties involved. Zurich then filed a cross-claim against Degesch for recovery of the $675,000.00 Zurich paid in settlement and for counsel fees it incurred in defense of the suit. Zurich contended that it had been prejudiced by Degesch's delay in reporting the occurrence. In its answer, Degesch counterclaimed for un-reimbursed defense costs and penalties.

Applying Louisiana law, the District Court found that Zurich was not prejudiced by Degesch's untimely notice. Alternatively, the Court also decided that Zurich had waived any defense of late

---

[4]Exportkhleb is the grain purchasing agent for the Soviet Government and the owner of the grain at the time of the allision.

[5]ABC Insurance Co. was the designation for the anonymous insurer of Degesch America, Inc., presumably to utilize Louisiana's Direct Action Statute. Subsequently, Zurich was substituted for ABC Insurance Co.

notice. Aside from determining that Zurich was obligated to provide Degesch with coverage under its insurance policy, the District Court also stated that Zurich's suit against its own insured was against public policy and thus imposed a penalty.

## Which Law Should Apply?

A threshold question in this case is whether Virginia law or Louisiana law governs the consequences of failure to give timely notice. Quite naturally, Zurich argues that the District Court should have applied Virginia law. Whether we should apply Virginia or Louisiana law presents a choice of law analysis.

Since jurisdiction in this case was based on diversity, the District Court was correct in applying the conflicts of law principle of the forum state, Louisiana. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477, 1480 (1941). Louisiana courts have adopted a combination of Professor Brainerd Currie's interest analysis and the *Second Restatement's* "most significant relationship" test in choice of law contexts. *See generally,* B. Currie, *Selected Essays on the Conflict of Laws* (1963); *Sandefer Oil & Gas v. AIG Oil Rig of Texas, Inc.,* 846 F.2d 319, 322 (5th Cir.1988). While we agree with the District Court's finding that Louisiana law applies, we believe that it warrants more precise reasoning.

Under Louisiana's choice of law principle, the first inquiry is whether there is a true or false conflict of interest. *Sandefer,* 846 F.2d at 322; *Fallon v. Superior Chaircraft Corp.,* 884 F.2d 229, 231 (5th Cir.1989). A false conflict exists when only one state has a legitimate interest in the application of its law to resolve the issue. A true conflict exists when each state has such an interest. To determine whether a state has a legitimate interest in requiring that its laws be applied, one must examine whether "the state's relationship to the dispute is within the scope of the state's policy." *Sandefer,* 846 F.2d at 322. If there is a false conflict, one must apply the law of the state with the interest. If there is a true conflict or an unprovided for case in the interest analysis principle, a

situation where neither state has an interest, then one must look to the *Second Restatement*.[6]  *Id.*

According to Louisiana's conflict of law principles, we must first apply Professor Currie's interest analysis.  Under Louisiana law, the insurer cannot deny coverage merely because its insured failed to give notice of loss as soon as practicable.  *Sandefer,* 846 F.2d at 321.  Rather, to deny coverage on the basis that it did not receive notice as stipulated in the policy, the insurer must show "actual prejudice".  *Id.; Elevating Boats, Inc. v. Gulf Coast Marine, Inc.,* 766 F.2d 195, 198 (5th Cir.1985);  *Champion v. Panel Era Mfg. Co.,* 410 So.2d 1230, 1236 (La.App. 3d Cir.1982). Essentially, Louisiana's policy "interest underlying its rule involves not only protection of its insured residents, but protection of Louisiana plaintiffs and the general public as well." *Champion,* 410 So.2d at 1237.  Louisiana's rule of requiring proof of actual prejudice aims to prevent insurers from avoiding their contractual obligations and thus to assure payment of liability claims up to the policy limits.  *Id.,* citing *Fakouri v. Insurance Co. of N.A.,* 378 So.2d 1083, 1086–87 (La.App. 3d Cir.1979) and *Miller v. Marcantel,* 221 So.2d 557, 559 (La.App. 3d Cir.1969).

In this case, the insured is a Louisiana resident.  The District Court found that "Degesch is a corporation organized under the laws of Delaware, having an office and a principal place of business in Weyers Cave, Virginia and Reserve, Louisiana."  Since Degesch is a Louisiana resident, Louisiana

---

[6]The *Second Restatement's* "center of gravity" or "most significant relationship" test focuses on the state's contacts with the issue.  Section 188 states the following contacts as most relevant:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue. *Restatement (Second) of Conflict of Laws § 188* (1971).

has an interest in seeing that Degesch's insurance coverage is protected and that Zurich should be able to avoid its contractual obligations only if it can show actual prejudice.

Virginia does not have an interest in seeing that its law is applied in this matter. In Virginia, the insured's timely notice to the insurer is a condition precedent to coverage. *State Farm Fire and Casualty Co. v. Scott,* 236 Va. 116, 372 S.E.2d 383, 385 (1988); *State Farm Mut. Auto. Ins. Co. v. Porter,* 221 Va. 592, 272 S.E.2d 196, 199 (Va.1980). The insurer does not need to show that it was actually prejudiced by the insured's untimely notice. *Scott,* 372 S.E.2d at 385; *Porter,* 272 S.E.2d at 199. Unlike Louisiana's policy, Virginia's underlying policy is to protect Virginia insurers from stale claims. *Lord v. State Farm Mut. Auto. Ins. Co.,* 224 Va. 283, 295 S.E.2d 796, 799 (1982).

In this case, Zurich is neither a domiciliary nor a resident of Virginia. Zurich does not have its principal place of business in Virginia.[7] In *Sandefer,* we held that Texas policy regarding immediate notice of loss to protect Texas insurers was not applicable because none of the defendant insurance companies were domiciled in Texas. Thus, in *Sandefer,* we held that Texas did not have an interest in the issue. *Sandefer,* 846 F.2d at 323. Accordingly, Virginia does not have an interest in seeing that its law is applied in this matter.[8]

This is a false conflict of interest case. We agree with the District Court that only Louisiana has an interest in this matter. So we must apply Louisiana law.

---

[7]Even though Zurich is licensed to do business in Virginia, we interpret that Zurich is merely "doing business" in Virginia. This is not enough to establish that Virginia would have an interest in this matter. We stated in *Sandefer* that Texas's policy does not protect nonresident insurers "doing business" in Texas. *Sandefer,* 856 F.2d at 323. To assume that it does would give too broad an interpretation to such a policy.

[8]It is irrelevant in this test that the insurance policy contract was negotiated and made in Virginia. What contacts Virginia has with the insurance policy come into question in the second test, the *Second Restatement's* "most significant relationship" or "center of gravity" test. Under the interest analysis test, we only consider what is each state's policy underlying the law in question.

Actual Prejudice

We now reach the issue whether Zurich can deny Degesch's claim on the basis of Degesch's failure to give immediate notice of the occurrence and the potential claims. In its reservation of rights letter, Zurich alleged a late notice defense under Section IV(2) of its insurance policy with Degesch.[9] Section IV(2) of the insurance policy stipulates that:

(a) You must see to it that we are notified promptly of an "occurrence" which may result in a claim. Notice should include (1) how, when and where the "occurrence" took place; and (2) the names and addresses of any injured persons and witnesses.

(b) If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit".

While Section IV(2) of the policy does require that Degesch "promptly" notify its insurer, nowhere in the relevant section is there language of it being an express condition precedent to liability. The rule in Louisiana is that where the requirement of timely notice is not an express condition precedent, the insurer must demonstrate that it was sufficiently prejudiced by the insured's late notice. *Auster Oil & Gas, Inc. v. Stream,* 891 F.2d 570, 576 (5th Cir.1990); *MGIC Indem. Corp. v. Central Bank of Monroe, La.,* 838 F.2d 1382, 1387 (5th Cir.1988); *Barnes v. Lumbermen's Mut. Casualty,* 308 So.2d 326, 328 (La.App. 1st Cir.1975). The District Court found that Zurich was not prejudiced by Degesch's untimely notice of the occurrence.

Zurich contends that Degesch's untimely notice severely prejudiced its interests. Five days following the allision, the ANPA's owners notified Degesch that they intended to hold Degesch fully responsible for the allision and all resulting damages.[10] Degesch did not relay the occurrence to Zurich until nine months after the allision. By the time Zurich was informed of the allision, the wharf

[9]At the time of the allision, Degesch was insured under a policy of liability insurance issued by Zurich Insurance Company. Bearing No. GLO–1455–016–01, the policy was effective from January 1, 1989 until March 23, 1989.

[10]The relevant letter reads: "On behalf of the owners of the M/V ANPA, we hereby place you on notice that the owners will hold you fully responsible for all damages, consequences and losses occasioned by your improper installation of equipment aboard the ANPA on or about 11 March 1989 at the Peavey Grain Elevator."

had been repaired, the cargo had been removed, and the vessel had sailed and been sold. Even more importantly, Zurich contends, Degesch did not engage an electrical engineering expert to conduct surveys or inspections of the electrical gear and the vessel. In light of these circumstances, Zurich argues that Degesch denied Zurich the very opportunity to perform a prompt and thorough investigation. Zurich believes that if it had such an opportunity then the outcome of the suit would have been different. In support of its contentions, Zurich points to *Elevating Boats,* where we found that an insured's failure to give timely notice prejudiced its insurer. *Elevating Boats,* 766 F.2d at 199–200.

In *Elevating Boats,* the insured notified its insurer two weeks before trial. *Elevating Boats,* 766 F.2d at 198. We found that the insurer was prejudiced because it did not have the opportunity to represent its interests during the pending litigation, to negotiate for settlement and to make a prompt and thorough investigation. *Id.* While Zurich did not have a chance to participate in an investigation of the actual vessel and damaged wharf itself, the trial judge was required not to overlook the fact that Zurich did have a chance to fully represent its own interest in the original suit. In fact, Degesch notified Zurich of the suit three days after it was filed.

Immediately upon notification of the allision, Degesch through its counsel, Ralph Smith, took actions to protect its interests. On March 18, 1989, Degesch, represented by its surveyor, and ANPA conducted a joint survey of the vessel. Degesch obtained the services of a marine engineer to attend the surveys and to retain other specialized experts or surveyors as necessary. All this was done under the direction of its counsel, Ralph Smith. Smith also conducted extensive surveys of the wharf and the vessel. He obtained the testimony of the master, the chief engineer and other crew members of the ANPA. But what is of critical importance is that when Zurich's new attorneys, Thomas Gaudry and Patricia Crowley of Windhorst, Gaudry, Talley & Ranson, took over after Deutsch, Kerrigan & Stiles was dismissed, the new attorneys were furnished with all the information Smith had gathered. Zurich's new attorneys must have been completely satisfied with the state of investigation, as they

proceeded to trial without a single shred of new discovery or factual inquiry concerning that obtained by Ralph Smith.

Apparently the new attorneys' main contention is that Degesch's failure to retain an electrical engineering expert was so prejudicial that it left Zurich with no viable recourse but to settle. After the trial, however, Zurich's effort to question the qualifications of Peter Hill, the marine engineer engaged by Degesch, is not persuasive. The qualifications of an expert do not depend on his formal title. In addition, the trial judge was in the position of determining the actual, and sufficient, qualifications of an expert. We also cannot overlook the fact that Smith also conducted a detailed deposition of the chief engineer and the vessel's electrician, which were adopted by Zurich's new attorneys. With this material available as the basis for hypothetical questions to an expert,[11] Zurich could have employed one of unquestioned qualification to make out a plausible theory of the electrical basis for the occurrence and Degesch's part in it.

Zurich's new attorneys also argue that prejudice suffered by Zurich was shown in David Deluca's testimony in open court. Our review of the record convinces us, however, that David Deluca is in no way qualified to testify on whether Zurich was prejudiced by the absence of a "qualified" electrical engineering expert. David Deluca is employed by Zurich as a claims manager in its New Orleans branch; his qualifications do not include the skills necessary to give expert testimony regarding electrical matters. It is indeed contradictory that Zurich's new counsels should argue that David Deluca, a claims manager, was qualified to give expert testimony, and yet maintain that Peter Hill, a marine engineer, was not.

Zurich was too hasty in its decision that Degesch's untimely notice was a *fait accompli* against

---

[11]Degesch also retained Charles L. Riemer and Clinton Barton, who inspected the wiring immediately after the allision. Riemer is a licensed marine engineer, and Barton is a qualified marine electrician. All of their surveys were made available to Zurich's new attorneys who were satisfied with what their predecessor, Ralph Smith, had compiled.

its interests. We find it indeed inconsistent that Zurich's new attorneys totally relied on Smith's investigations while maintaining now that they could not rely on the investigative reports of the experts Degesch had obtained. Since we are not left with a definite and firm conviction that a mistake has been made, the District Court's finding was not clearly erroneous here. *Black Gold Marine, Inc. v. Jackson Marine Co.,* 759 F.2d 466, 470 (5th Cir.1985); *Williams v. Reading & Bates Drilling Co.,* 750 F.2d 487, 489 (5th Cir.1985). The trial judge's findings, express and implied, in this essentially factual matter fully justified the finding that Zurich was not prejudiced by Degesch's untimely notice of the allision.

Waiver

In addition to its finding of no actual prejudice, the District Court alternatively held that Zurich waived its right to raise the "late notice" defense. We agree.

Waiver is generally understood to be the intentional relinquishment of a known existing legal right. *Ledoux v. Old Republic Life Ins. Co.,* 233 So.2d 731, 735 (La.App. 3d Cir.1970); *Tate v. Charles Aguillard Ins. & Real Estate,* 508 So.2d 1371, 1373 (La.1987); 16B Appleman, *Insurance Law and Practice* § 9081 (1969). The requirements of waiver are that there is an existing right, knowledge of its existence, and either an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. *Ledoux,* 233 So.2d at 735; *Tate,* 508 So.2d at 1373; 16B Appleman, *Insurance Law and Practice* § 9081 (1969).

In the present case, the issue of waiver is complicated because it is interwoven with an insurer's duty to defend its insured. If the policy calls for a defense of the claim, an insurer has the obligation to provide a defense to its insured, even if ultimately the insurers may have no liability under the policy. *Dugas Pest Control of Baton Rouge v. Mut. Fire, Marine and Inland Ins. Co.,* 504 So.2d 1051, 1053 (La.App. 1st Cir.1987). To protect its own interest, an insurer can simultaneously

provide its insured with a defense and contest coverage with its insured. *Id.* When such a conflict of interests arises and the insurer has knowledge of facts indicating noncoverage, however, it must obtain a nonwaiver agreement to reserve its rights. *Ideal Mut. Ins. Co. v. Myers,* 789 F.2d 1196, 1201 (5th Cir.1986); *Employers Mut. Liability Ins. Co. of Wisconsin v. Sears, Roebuck and Co.,* 621 F.2d 746, 747 (5th Cir.1980). If an insurer has knowledge of facts indicating noncoverage and voluntarily assumes the insured's defense without obtaining a nonwaiver agreement to reserve its rights, the insurer effectively waives all such policy defenses. *Myers,* 789 F.2d at 1201; *Sears,* 621 F.2d at 747. The insurer's notice of its intent to avail itself of the defense of noncoverage must be timely. *Pitts By and Through Pitts v. American Sec. Life Ins. Co.,* 931 F.2d 351, 356–75 (5th Cir.1991); 16C Appleman, *Insurance Law and Practice* § 9361.25 (1969).

In the present case, Zurich was first informed of the occurrence in January 1990. Immediately thereafter Scott Collier, a Zurich claims representative in Dallas, Texas, contacted Ralph Smith and requested information about the allision. Smith provided copies of his investigative material and the reports he had made to Degesch previously.[12]

---

[12]Copies of Degesch's counsel's opinion letters and reports outlining his investigations were sent to Zurich's Dallas office when Zurich was first notified of the allision. One of the reports states in relevant parts:

> Degesch America was placed on notice by the vessel owners on March 17, 1989, holding Degesch liable for all damage and loss occurring as a result of the allision of the M/V ANPA with the Nashville Avenue Wharf in the Port of New Orleans ...

> On the basis of information at hand, it is difficult to understand how anything done in connection with the installation of the blowers could have resulted in the casualty as claimed. The system was energized and in operation without incident for almost 24 hours before the allision occurred ...

> There is a possibility that a short may have occurred when one or more of the crew members stepped on or tripped over the connections at one of the hatches. At least one broken splice was observed at the time of the survey, however it is too soon to tell whether this contributed to the casualty. In order to avoid arguments we retained possession of the splice which was cut out of the line, and will be submitted for examination and evaluation by the independent expert ...

For Zurich's current claim of nonwaiver to be plausible, Zurich should have issued its reservation of rights letter within a reasonable time after the date in January 1990 on which it was informed of the occurrence. Rather Zurich assumed the defense of its insured and employed Degesch's counsel as its own, without reserving its rights.[13] Zurich forwarded additional claims, cross-claims and/or third-party claims to Smith for defense. By accepting its duty to defend without a reservation of rights, Zurich effectively waived its right to assert a defense to its liability under the policy. *Pitts,* 931 F.2d at 356–57.[14]

Zurich, however, though it ultimately fulfilled its duty to defend its insured, argues that the duty to defend did not arise until Zurich was notified of the suit. Zurich justifies this contention by treating *Ideal Mut. Ins. Co. v. Myers,* 789 F.2d 1196 (5th Cir.1986), as the seminal case on this issue. In *Myers,* even if the insurer's investigation had disclosed a basis for noncoverage shortly after the accident, any duty on the insurer to reserve its rights or to defend unconditionally did not arise until suit was filed. *Id.* at 1201. The court stated:

> ... [a]lthough we do not hold that an insurer is at liberty in all circumstances to await the filing of an actual lawsuit before advising its insured of its position and of a potential conflict of interest, we conclude that in the instant case the defendants have failed to demonstrate prejudice from the delay, if any, between Ideal's discovery of a possible basis for noncoverage and its delivery of the reservation of rights letter.

*Myers,* 789 F.2d at 1202. Zurich argues that we must acknowledge this same conclusion in the present case. While the factual scheme may seem the same, there are very important differences between the present case and *Myers.*

In *Myers,* the insurer delivered its reservation of rights letter shortly after its insured informed

---

[13]By hiring Degesch's then counsel, Ralph Smith, as its own and failing to immediately reserve its rights, Zurich effectively ratified Degesch's act of late notice. What is even more persuasive is that Zurich later paid part of Degesch's fees from Deutsch, Kerrigan & Stiles.

[14]It was not until May 29, 1990 that Zurich issued a reservation of rights letter to Degesch. Zurich waited five months after first learning of the occurrence.

it of the third-party suit. In fact, the time span between the two events was less than a month. *Id.* at 1201. Given the insurer's immediate notification of its intent to claim noncoverage, this court found that its reservation of rights letter was sufficient to inform the insured of its position and was timely, as to not result in a waiver of such a right. *Id.*

In the present case, however, there was a span of two months between the time that Degesch informed Zurich of the suit and the time that Zurich delivered its reservation of rights letter. By the time Degesch informed Zurich of the suit, Zurich had what it had deemed as sufficient knowledge and investigation[15] to require that it give Degesch timely notice.

Zurich also cannot deny its coverage obligations by contending that an insurer's privilege to investigate a claim justified its late reservation of rights. An insurer does have a reasonable amount of time to conduct any investigations of a loss without being barred from denying suspected coverage liability. 16C Appleman, *Insurance Law and Practice* § 9361.25 (1969). However we fail to understand Zurich's contention that it needed to make further investigations after being notified of the suit. Before notification of the actual suit, Zurich had the opportunity to conduct an investigation and was aware of the necessary facts. Consequently, we hold that Zurich waived its right of a noncoverage defense by its late reservation of rights.

## Zurich's Suit Against Its Assured

The District Court found that Zurich's suit against Degesch to recover attorneys' fees and the

---

[15]After reviewing copies of Smith's reports and investigative material, Zurich's claim specialist apparently concurred with Smith's evaluation and agreed that additional investigation was unnecessary pending further developments.

In a letter dated January 19, 1990, Scott Collier, Zurich's Casualty Claim Specialist wrote to Ralph Smith: "As we discussed it appears that no legal action has been filed at this time against our Insured and that we should simply await any such action since our investigation is complete. As we discussed there does not appear to be any liability upon the Insured. By investigating the claim initially, that may have served to prevent any legal action."

$675,000 paid in settlement was against public policy[16] because an insurer cannot recover by way of subrogation against its own insured. Zurich, however, contends that its suit is one for reimbursement, not subrogation. We agree with Zurich's argument.

This Circuit has overwhelmingly upheld the fundamental principle of insurance law which states that an insurer may not sue its own insured to recover under the insurance policy. *United States v. Parish of St. Bernard,* 756 F.2d 1116, 1127 (5th Cir.1985); *Dow Chemical Co. v. M/V Roberta Tabor,* 815 F.2d 1037, 1043 (5th Cir.1987); *Lanasse v. Travelers Insurance Co.,* 450 F.2d 580, 585 (5th Cir.1971); *Taylor v. Bunge Corp.,* 845 F.2d 1323, 1329 (5th Cir.1988). An insurer cannot by way of subrogation recover against its insured or an additional assured any part of its payment for a risk covered by the policy. *Parish of St. Bernard,* 756 F.2d at 1127; *M/V Roberta Tabor,* 815 F.2d at 1043; *Lanasse,* 450 F.2d at 585; *Taylor,* 845 F.2d at 1329.

While public policy does not allow an insurer to sue its own assured on the insurance policy,

---

[16]The District Court held that Zurich's suit against its insured typified the bad faith dealing against which LAS R.S. 22:1220 is designed to punish. LSA R.S. 22:1220 stipulates:

> A. An insurer including but not limited to foreign line and surplus line insurer owes to its insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damage sustained as a result of the breach.
>
> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
>
> (1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverage at issue ...
>
> (5) Failing to pay the amount of the claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss form the claimant when such failure is arbitrary, capricious or without probable cause.
>
> C. In addition to any general damages or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater ...

the law recognizes that there may be causes of action by an insurer outside the policy. *Parish of St. Bernard,* 756 F.2d at 1127. This case is one such instance. Zurich's claim against Degesch was not that, under the terms of the policy, Degesch was responsible for payment of the losses and expenses. Rather it was a claim by Zurich that Degesch's failure to give notice of the occurrence caused damage to Zurich. In fact, counsels for both parties stipulated before the trial judge that a settlement was reached and there was only the matter of coverage still to be decided.[17] These stipulations made in open court effectively have the power of a consensual agreement that if the court finds that Zurich was prejudiced by Degesch's untimely notice, then Degesch would be liable to reimburse fees paid by Zurich. *Thrash v. O'Donnell,* 448 F.2d 886, 889 (5th Cir.1971); *Donovan v. Hamm's Drive Inn,* 661 F.2d 316, 317 (5th Cir.1981). Zurich did not volunteer itself to pay the settlement fees but reserved its rights to dispute the coverage matter and Degesch agreed. Zurich's suit against Degesch is not one of subrogation but one of reimbursement.

We hold that Zurich's suit against its insured is not against public policy and reverse the District Court's finding that Zurich has to pay penalty fees of $5,000.

---

[17]The relevant court proceedings reads:

> Mr. Clegg [counsel for ANPA]: This stipulation has been read to all Counsels and its reads: "Now comes Counsel for Seaport, Transmed, Zurich Insurance Company and AGLIC and Degesch stipulating that a settlement has been reached in the above-captioned matter wherein Zurich and AGLIC will pay Seaport Shipping Company, Limited, and Transmed Shipping, Limited, the sum of $675,000 ..."
>
> "Zurich and AGLIC reserves their right to go forward against Degesch on the coverage issue. Counsel for Degesch has agreed that the settlement is reasonable."
>
> The Court: Let me see if I understand it. The only thing I have left if the coverage issue?
>
> Mr. Smith [counsel for Degesch]: Yes, sir.
>
> Mr. Gaudry [counsel for Zurich]: Zurich will fund the settlement, but then are going to dispute the coverage issue, and Degesch will owe Zurich that amount if there is no coverage.

Attorney's Fees

Zurich contends that the District Court erred in awarding Degesch those attorney's fees which Degesch incurred before it notified Zurich of the occurrence. Specifically, Zurich argues that its duty to defend did not arise until it received notice of the claim. Therefore, Zurich concludes, we must find according to *Gully & Assoc. v. Wausau Ins. Co.* that it is not liable for Degesch's attorney fees incurred before notice. *Gully & Assoc. v. Wausau Ins. Co.,* 536 So.2d 816, 818 (La.App. 1st Cir.1988). We are not persuaded by Zurich's arguments and find that the District Court's judgment should not be changed.

We agree that the insurer's duty to defend does not arise until it receives notice of a claim or suit. *Moskau v. Ins. Co. of North America,* 366 So.2d 1004, 1006 (La.App. 1st Cir.1988); *Gully,* 536 So.2d at 818. Delayed notice of a claim, however, relieves the insurer of its obligation if the insurer was actually prejudiced by the delay. *Gully,* 536 So.2d at 818; *Rovira v. LaGoDa, Inc.,* 551 So.2d 790, 794 (La.App. 5th Cir.1989). In *Gully,* the court decided that the insurer was not liable for prenotification defense costs and attorney fees. *Gully,* 536 So.2d at 818. The court reached this conclusion, however, after it found that the issue of actual prejudice was not applicable. The court deemed it determinative that the insurer was not denying coverage or trying to use the late notification as a basis for denying coverage.[18] In *Rovira,* another court found that the insurer was liable for prenotification attorney fees since it was not prejudiced by the insured's delay. *Rovira,* 551 So.2d at 795.

Zurich filed suit against its insured, contending that its coverage liability was based on Degesch's untimely notice. Having been presented with the issue of actual prejudice, we have held that Zurich has not been prejudiced by Degesch's late notice. What is even more decisive is the fact that Zurich cannot argue that it did not benefit from Degesch's investigative efforts prior to

---

[18]The court stated, "We do not believe [the actual prejudice] jurisprudence disposes of the matter before us since Employers is not denying coverage or trying to use the late notification as a basis for denying coverage." *Gully,* 536 So.2d at 818.

notification.  In fact, Zurich relied entirely on Degesch's investigations.  Therefore, we find that Degesch's attorney fees prior to notice are recoverable.

We affirm the District Court's judgment obligating Zurich to pay $15,704.18 in attorney's fees.

## Conclusion

We affirm that Zurich was not prejudiced by Degesch's untimely notice and therefore is liable for coverage.  While we find that Zurich must reimburse Degesch for its attorney's fees, we find that Zurich should not be penalized.

AFFIRMED IN PART.  REVERSED IN PART.