# CIRCUIT COURT OF NELSON COUNTY

Vermont Mutual
Insurance Co.

v.

The Centre, Inc.,
d/b/a The Monroe Institute

January 29, 2001

Case No. CL96-156

BY JUDGE J. MICHAEL GAMBLE

I am writing this letter to rule on the motion for declaratory judgment in the above matter. In this regard, I find that the defendant, The Monroe Institute, failed to give timely notice to Vermont Mutual Insurance Company (Vermont Mutual) of the claim of Daniel T. Morris against The Monroe Institute. My reasons for this ruling are set forth below.

The Monroe Institute has been located in Nelson County since 1974. It is a non-profit research and educational organization which has had as its mission the investigation of human consciousness. As part of its mission, it promotes the evolution of human consciousness and the development of other states of awareness through personal experience using an audio technology called Hemi-Sync. Hemi-Sync is a trademark audio technology based on the natural functioning of the brain that encourages coherent brain wave activity. Not only does The Monroe Institute offer the Hemi-Sync technology at its Nelson County location, it sells cassette tapes or CDs to be used with headphones and speakers.

Daniel T. Morris purchased Hemi-Sync tapes from The Monroe Institute. Morris, through his New Orleans attorney, submitted a formal claim for damages alleged to arise from the use of such tapes, by letter dated July 10, 1995. This letter was received by the Monroe Institute in July 1995. A second letter, with attachments, was sent to the attorney for The Monroe Institute on December 12, 1995. This letter was received by the attorney for The Monroe Institute in December 1995. Additionally, on September 21, 1995, Morris filed a lawsuit in the Louisiana state court seeking damages for his alleged injuries arising from the use of such tapes. This lawsuit was not served on The Monroe Institute nor a copy provided to its attorney. Morris also filed a lawsuit against The Monroe Institute on October 18, 1995, in the Circuit Court of Nelson County. In the Nelson County lawsuit, Morris also sought damages arising from the use of the Hemi-Sync tapes. Although this lawsuit was not served on The Monroe Institute, a copy of this lawsuit was faxed to the attorney for The Monroe Institute on or about November 15, 1995. Vermont Mutual Insurance Company provided The Monroe Institute with a commercial general liability policy for the period of May 15, 1990, through May 15, 1993, and May 18, 1993, through May 18, 1995. Both of these policies are "occurrence policies" and not "claims made" policies. The 1990 through 1993 policy required that the insured notify Vermont Mutual "promptly of an 'occurrence' which may result in a claim." It "requires prompt written notice of the claim or suit" in the event that a suit is filed. The 1993 through 1995 policy required that Vermont Mutual be "notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." Further, the policy required that Vermont Mutual "receive written notice of the claim or 'suit' as soon as practicable."

In addition to the commercial general liability policies, Vermont Mutual issued to The Monroe Institute a commercial umbrella liability policy. This policy required "prompt written notice" of any loss and required that the insured "immediately furnish us with a copy as well as copies of any other papers pertinent to the loss." While the umbrella policy was apparently in effect during the period of time that Morris claimed to be hurt, it is unlikely that the size of the Morris claim would activate the umbrella policy.

The founder, President, and Chief Executive Officer of The Monroe Institute was Bob Monroe. Mr. Monroe died on March 25, 1995. In June or July 1995, his daughter, Laurie Monroe, assumed the managerial control of The Monroe Institute. She succeeded her father as the President and Chief Executive Officer. Laurie Monroe testified that she had not been active in the day to day management of The Monroe Institute prior to July 1995. When the initial claim letter was received in July 1995, she directed the staff to make

inquiries about insurance policies that might cover the Morris claim. She was unaware of the existence of the Vermont Mutual policies. As noted above, the Vermont Mutual policies had expired as of May 18, 1995. As of July 1995, Selective Insurance Company had replaced Vermont Mutual as the carrier for The Monroe Institute.

Ms. Monroe was unable to find any policy that afforded coverage. Thus, no notice was given to Vermont Mutual of the Morris claim during 1995. On February 1, 1996, Michael W. Boles was employed as Vice-President and Director of Corporate Development for The Monroe Institute. On the instructions of Ms. Monroe, he launched a search for insurance coverage for the Morris claim. During February 1996, he contacted Lee Insurance in Charlottesville, Virginia, to make inquiries about the insurance coverage. Lee Insurance was the insurance agent for The Monroe Institute through which both the Vermont Mutual and Selective policies were issued. At the time that he made the initial call, he was advised by someone at Lee Insurance that the Selective policy was an "occurrence" policy and thus coverage was not afforded for the Morris claim. No mention was made by the Vermont Mutual policy. .

Approximately three weeks after the February 1996 telephone communication with Lee Insurance, Mr. Boles located a copy of the Vermont Mutual policy. He immediately contacted Lee Insurance and reviewed the claim with a claims representative. Thereafter, The Monroe Institute formally notified Vermont Mutual by written correspondence dated May 18, 1996. On April 1, 1996, the attorney for The Monroe Institute faxed a copy of the Virginia lawsuit to Vermont Mutual. Vermont Mutual also obtained a copy of the Louisiana lawsuit through its attorney and the attorney for Morris.

By letter dated 1996, Vermont Mutual denied The Monroe Institute coverage on the Morris claim and declined to defend The Monroe Institute, subject to a claim of rights on the coverage issues. It also instituted a declaratory judgment against in the United States District Court for the Western District of Virginia. In the summer of 1996, Vermont Mutual and The Monroe Institute informally agreed to coordinate efforts to reach a settlement of the Morris claim. On July 16, 1996, Vermont Mutual and The Monroe Institute entered into an agreement to settle the Morris claim. The total settlement paid to Morris was $18,000.00. Vermont Mutual paid $2,000.00 and The Monroe Institute paid $16,000.00. Subsequent to the settlement, this declaratory judgment action was filed in order for there to be a determination of the ultimate responsibility for the payment of this settlement.

The requirement that an insured give timely notice of an occurrence or claim to the insurer in accordance with the terms of a policy is a condition

precedent to an insurance company's liability coverage. *State Farm v. Porter*, 221 Va. 592, 597, 272 S.E.2d 196 (1980); *State Farm v. Douglas*, 207 Va. 265, 267, 148 S.E.2d 775 (1966). If the provisions in an insurance policy or notice are not complied with, recovery will be barred under the policy. *State Farm v. Douglas, supra*, at 267.

The question of whether notice has been given to an insurer "as soon as practicable" is one for the fact-finder to determine. *Liberty Mutual v. Safeco*, 223 Va. 317, 323, 288 S.E.2d 469 (1982). Further, if the violation of the notice requirement is substantial and material, the insurance company is not required to show that it was prejudiced by the violation of the notice requirements. *State Farm v. Walton*, 224 Va. 498, 501 (1992); *State Farm v. Scott*, 236 Va. 116, 120, 372 S.E.2d 383 (1998).

In the instant case, it was approximately seven months before the first oral notice of claim was made to Lee Insurance, the local insurance agent. It was approximately eight months from the initial claim that written notice of claim was made to Vermont Mutual. During this entire period of time, the Vermont Mutual policy information was in the possession of The Monroe Institute. The main reason cited for the failure of The Monroe Institute to locate these policies was because Bob Monroe, its founder, had died in March 1995. The requirement in a policy that notice of an accident be given "as soon as practicable" means that the notice must be given within a "reasonable time" after the accident. To determine reasonableness of a delay, "the facts and circumstances in each particular case must be considered." *State Farm Mutual v. Douglas*, 207 Va. 265, 267, 148 S.E.2d 775 (1996).

In the instant case, there is not sufficient reason given to explain the delay. If the polices could be found in March 1996, they certainly could have been found earlier. Simply being unable to find the policy is not a sufficient reason or circumstance to justify a delay.

Therefore, I find that Vermont Mutual is not required to furnish coverage in this matter. I grant judgment in favor of Vermont Mutual.