Affirmed and Opinion filed June 27, 2002









Affirmed and Opinion filed June 27, 2002.                   

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-00349-CV

____________

 

EXCESS UNDERWRITERS AT LLOYD=S, LONDON AND CERTAIN COMPANIES SUBSCRIBING SEVERALLY BUT NOT
JOINTLY TO POLICY NO. 548/TA4011F01,
Appellants

 

V.

 

FRANK=S CASING CREW & RENTAL TOOLS, INC.,
Appellee

 



 

On
Appeal from the 189th Judicial District Court

Harris County, Texas

Trial
Court Cause No. 98-08295

 



 

O
P I N I O N








Excess
Underwriters at Lloyd=s, London and Certain Companies Subscribing Severally but Not
Jointly to Policy No. 548/TA4011F01 (Athe Underwriters@) filed this suit against their insured, Frank=s
Casing Crew & Rental Tools, Inc. (AFrank=s@), seeking reimbursement of approximately $7 million the
Underwriters paid to settle a claim relating to the collapse of a drilling rig
in the Gulf of Mexico. The Underwriters paid the claim even though they alleged
it was not covered (at least in part) under the terms of their insurance
policy.

Frank=s
and the Underwriters filed cross-motions for summary judgment on the issues of
coverage and reimbursement.  After
initially ruling in favor of the Underwriters, the trial court reversed itself
when the Texas Supreme Court issued Texas Ass=n
of Counties County Government Risk Management Pool v. Matagorda County, 52 S.W.3d 128 (Tex. 2000). 
Based on that case, the trial court held that the Underwriters had no
right to reimbursement and entered a take-nothing judgment in favor of Frank=s.

            On
appeal, the Underwriters assert the trial court should have applied Louisiana
law and that doing so would have produced a different result. Alternatively,
the Underwriters argue that the Matagorda County case is not
applicable.  Because we disagree with the
Underwriters on both counts, we affirm.

 Frank=s installed a drilling platform in the Gulf of Mexico for Arco
Oil & Gas Company.  When the platform
collapsed several months after installation, Arco and related entities sued
Frank=s
and others in Harris County District Court. 
Frank=s promptly notified its primary insurers as well as its excess
insurers C the Underwriters.  Frank=s
primary insurers provided defense counsel. 
The Underwriters sent Frank=s reservation-of-rights letters, contesting coverage of some of
the claims made against Frank=s.

Shortly
before trial in the underlying case, the Underwriters unsuccessfully attempted
to settle Arco=s claims that it conceded were covered under their policy,
leaving unsettled Arco=s other claims against Frank=s.  The Underwriters also
offered to settle the policy dispute with Frank=s by paying two-thirds of a global settlement with Arco.  Finally, the Underwriters offered to provide
$5 million for settlement if Frank=s agreed to arbitrate all coverage issues.  All these offers were refused. 








Instead,
Frank=s
asked Arco for a settlement demand within the excess policy limits, and
forwarded Arco=s $7.5 million demand to the Underwriters. Frank=s
demanded that the Underwriters pay the full amount, asserting the demand was
reasonable and covered by the Underwriters= policy.  See American
Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 849 (Tex.1994) (defining
the duty imposed in G.A. Stowers Furniture Co. v.
American Indem. Co., 15 S.W.2d 544 (Tex.1929)). 

Due
to the risk of a larger judgment, the Underwriters decided to fund the entire
$7.5 million settlement, without any contribution from Frank=s
or agreement by Frank=s to resolve coverage issues later.  On the same day that the Underwriters settled
Arco=s
claims, they informed Frank=s they intended to seek reimbursement, and filed this
declaratory suit for construction of the policy coverage.  Frank=s never agreed that the Underwriters had a right to seek
reimbursement. 

                                                                  I.  Texas Law

In
the Matagorda County case, the supreme court stated

[W]e
hold that, when coverage is disputed and the insurer is presented with a
reasonable settlement demand within policy limits, the insurer may fund the
settlement and seek reimbursement only if it obtains the insured's clear and
unequivocal consent to the settlement and the insurer's right to seek
reimbursement.  

52 S.W.3d
at 135.  Here, the uncontested facts show
that coverage was disputed, and Arco=s settlement demand was reasonable and within policy
limits.  Thus, the Underwriters could
fund the settlement and seek reimbursement only if Frank=s
unequivocally consented to the settlement and the Underwriters=
right to seek reimbursement.  It is
undisputed that Frank=s consented to the former, but not the latter.  Assuming (as we must) that the supreme court
meant exactly what it said, the Underwriters cannot seek reimbursement.








The
Underwriters assert Matagorda County was limited to its specific facts,
and argue this case is distinguishable because (1) the Underwriters are not the
primary insurer with a unilateral right to settle the underlying case;  (2) the Underwriters did not control the
defense and settlement negotiations; (3) Frank=s participated in the settlement and agreed to be bound by it;
and (4) Frank=s responded (rather than remaining silent) to the Underwriters=
statement of intent to seek reimbursement. 
But in Matagorda County, the supreme court justified its severe
limit on any equitable right to reimbursement[1]
on grounds this was necessary to avoid conflicts between insurer and insured,
and to protect the insured from having to choose between rejecting the
settlement or accepting a financial obligation it could not pay.  See id., 52 S.W.3d at 134-35. The
court noted that insurers were in a better position to protect themselves by
seeking prompt resolution of the coverage dispute in a declaratory action, by
drafting better policies, or by raising premiums to cover payments for
non-covered claims.  Id. at
135-36.  None of the Underwriters=
distinctions affect any of these reasons.

We
recognize this case carries Matagorda County to a logical conclusion
that is somewhat disquieting C Frank=s was able to resolve the parties= coverage dispute in its own favor simply by sending a Stowers demand to the Underwriters.  Thereafter, the Underwriters had to pay if
Arco=s
claims were within the policy, but also had to pay if they are not
within the policy because there was no right to reimbursement.  But this is a matter that the Underwriters
must take up with the superior court.

                                                              II.
Louisiana Law

The
Underwriters assert that Louisiana law applies. 
We presume Louisiana law is the same as Texas law unless the
Underwriters prove the contrary.  See
Weatherly v. Deloitte & Touche, 905 S.W.2d
642, 650 (Tex. App.CHouston [14th Dist.] 1995, writ dism=d
w.o.j.), leave granted, mand.
denied, 951 S.W.2d 394 (Tex. 1997). 
We therefore examine the various authorities cited by the Underwriters
for that proposition.








The
Underwriters cite numerous Louisiana cases holding an insurance company may
recover from its insured any policy proceeds that are erroneously or mistakenly
paid.[2]  But in this case the Underwriters were not
mistaken; indeed, their eyes were wide open to their dilemma.  Louisiana generally does not allow
reimbursement to an insurer that pays policy proceeds with knowledge of the
facts (as the Underwriters did here).  See
Steptore v. Masco Constr.
Co., Inc., 643 So.2d 1213, 1216-17 (La. 1994).  Texas law is no different.  See Pennell v.
United Ins. Co., 243 S.W.2d 572, 576 (Tex. 1951).  Therefore, these cases do not show Texas and
Louisiana law differ.[3]

The
Underwriters also cite cases involving express agreements by the insured that
preserved the coverage issue for later litigation.[4]  But Texas also allows an insurer to settle
and seek reimbursement if the insured expressly agrees it may do so.  See Matagorda County, 52 S.W.3d at
135.  In this case, Frank=s
did not agree that the Underwriters could settle and still litigate coverage
issues later.  When settlement was
announced, counsel for Frank=s stated its position that the Underwriters were waiving any
coverage issues they had.  Again, the
cited cases do not show Louisiana law differs from that of Texas.  








Finally, the Underwriters assert a claim under Louisiana law
for unjust enrichment, citing a general statute and case.  See La.
Civ. Code Ann. art. 2298 (West 2001); Edmonston
v. A-Second Mortgage Co. of Slidell, Inc., 289 So.2d 116, 120-23 (La.
1974).  But these authorities do not
apply unjust enrichment in the context of a settlement payment when coverage
issues are disputed.  This merely begs
the question whether Frank=s has been Aunjustly enriched.@  The Texas Supreme Court
says it has not; nothing in the general principles of Louisiana law proves the
contrary.  

Because
the Underwriters have not shown that Louisiana law would require a different
result from Texas law in this case, we presume that both are the same.  Applying Texas law according to Matagorda
County, we overrule the Underwriters= issues and affirm the trial court=s
judgment.

 

 

 

 

 

/s/        Scott
Brister

Chief Justice

 

 

 

 

Judgment rendered and Opinion filed June
27, 2002.

Panel consists of Chief Justice Brister and Justices Anderson and Frost.

Publish C Tex. R. App. P.
47.3(b).

 











[1]  The
Underwriters did not assert a contractual right to reimbursement.





[2]  See In re
Jeffers, Nos. Civ.A. 00-3261 & 00-3262, 2001
WL 96401, at *6 (E.D. La. Feb. 2, 2001); Acadia Ins. Agency, L.L.C. v. Transp. Ins. Co., No. Civ.A.99-1991, 2000 WL 863975, at
*1 (E.D. La. June 27, 2000); Insurance Co. of N. Am. v. West of Eng. Shipowners Mut. Ins. Ass=n, 890 F.Supp. 1302, 1310-11 (E.D. La. 1995);  Prudential Ins. Co. of Am. v. Harris,
748 F.Supp. 445, 447 (M.D. La. 1990); Dear v. Blue
Cross of La., 511 So.2d 73, 76 (La. Ct. App. 1987); Aetna Cas. & Sur. Co. v. M & A
Farms, Ltd., 462 So.2d 1323, 1326-27 (La. Ct. App. 1985); Mutual Fire,
Marine & Inland Ins. Co. v. Electro Corp., 461 So.2d 410, 411-13 (La.
Ct. App. 1984);  Shelter Ins. Co. v.
Cruse, 446 So.2d 893, 895 (La. Ct. App. 1984); DeVillier
v. Highlands Ins. Co., 389 So.2d 1133, 1137-38 (La. Ct. App. 1980); Central
Sur. & Ins. Corp. v. Corbello,
74 So.2d 341, 343-44 (La. Ct. App. 1954). 






[3]  Similarly,
we do not see how United States v. Parish of St. Bernard applies, as the
only reimbursement right mentioned in that case is triggered by fraud.  See 756 F.2d 1116, 1128 (5th Cir.
1985). 





[4]  See T.H.E.
Ins. Co. v. Larsen Intermodal Servs.,
Inc., 242 F.3d 667, 673-75 (5th Cir. 2001); Peavey Co. v. M/V ANPA,
971 F.2d 1168, 1176-77 (5th Cir. 1992); Sheeren
v. Gulf Ins. Co. of Dallas, Tex., 174 So.380, 384 (La. Ct. App. 1937).