## CIRCUIT COURT OF FAIRFAX COUNTY

Old Town Funeral Choices

v.

Northern Virginia
Funeral Choices et al.

August 15, 2000

Case No. (Chancery) 161875

BY JUDGE JANE MARUM ROUSH

This matter came on for a bench trial on December 20 and 21, 1999. At that time, the Court took the case under advisement. The Court has now reviewed all of the pleadings and briefs submitted by counsel and considered all of the testimony of witnesses and the argument of counsel. For the following reasons, the Court finds in favor of the plaintiff.

In this case, plaintiff Old Town Funeral Choices, L.L.C. ("OTFC") filed a bill of complaint against Northern Virginia Funeral Choices, Inc. ("NVFC") and Russell D. Harman seeking to enjoin NVFC and Mr. Harman from using the service mark of "Northern Virginia Funeral Choices" (or any mark

confusingly similar to "Northern Virginia Funeral Choices") plus compensatory and punitive damages.

Both the plaintiff and the defendants claim a right to use the service mark "Northern Virginia Funeral Choices" in connection with providing discount funeral services. To resolve this dispute, the Court must determine what service mark protection, if any, is afforded by common law use, fictitious or assumed name registration, corporate name registration, state service mark registration, and federal service mark registration.

*Facts*

The facts of this case, as adduced at trial, are set forth below.[1]

Richard DeCosta is the president of OTFC. He first met Mr. Harman several years ago when both were working in the funeral business in Arlington, Virginia. In 1997, both Mr. DeCosta and Mr. Harman were employees of Service Corporation International (SCI), one of the nation's largest owners of funeral homes. Mr. DeCosta planned to leave SCI and go into business for himself as a provider of discount funeral services. Both Mr. DeCosta and Mr. Harman acknowledge that neither of them originated the idea of discount funeral services. The idea has existed within the funeral service industry for some time. It involves providing funeral services for as low a cost as possible by dispensing with, among other things, funeral homes, ornate caskets, limousines, and the like. Both parties advertised that they could provide a funeral and burial for as little as $800. The costs of cremation could be as low as $645. Toward that end, on October 14, 1997, Mr. DeCosta incorporated his business in Virginia under the name of "Old Town Funeral Choices, L.L.C." In the fall of 1997, Mr. DeCosta had over 100 business cards and letterhead printed with the names "Old Town Funeral Choices" and "Northern Virginia Funeral Choices." He limited distribution of the business cards and letterhead to potential investors, as he was still in the employ of SCI until December 1997.

In December 1997, Mr. DeCosta left the employ of SCI and began in earnest to establish the business of OTFC. The Department of Health Professions of the Commonwealth of Virginia licensed OTFC to conduct funerals in March 1998. OTFC conducted its first funeral in March 1998.

---

[1]    To the extent the facts were disputed at trial, the following recitation constitutes the Court's findings of fact. A timeline outlining the salient events in this case is attached as an Appendix.

In May 1998, OTFC registered with the United States Patent and Trademark Office (the "USPTO") the service mark of "Old Town Choices" for the provision of funerals, cremation, and embalming. His application was a "use application," meaning that he was already using the mark at that time. The USPTO accepted that registration. Plaintiff's Ex. Nos. 7A and 7B.

In the early summer of 1998, Mr. DeCosta had about ten tee shirts made for his business with the name "Northern Virginia Choices" embroidered on the chest.

Mr. DeCosta planned to extend the geographic area served by OTFC. His fledgling business could not afford any more federal service mark registrations. Instead, OTFC filed a so-called "fictitious name certificate" (required by Va. Code § 59.1-69) in the land records of Fairfax County on August 27, 1998, in which OTFC certified that it was conducting funeral services under the name of "Northern Virginia Funeral Choices." Mr. DeCosta believed that the fictitious name certificate would offer some protection for his use of the name "Northern Virginia Funeral Choices."

Mr. Harman left the employ of SCI in June 1998. Sometime prior to August 31, 1998, Mr. Harman and Mr. DeCosta discussed the possibility of Mr. Harman's becoming a principal of OTFC. On August 31, 1998, Mr. Harman wrote Mr. DeCosta outlining the terms he proposed for his participation in the business. Plaintiff's Ex. No. 9. Mr. DeCosta did not agree with Mr. Harman's terms and did not respond to the proposal.

Sometime in September or October 1998, Mr. DeCosta and Mr. Harman (and others) met at a restaurant. According to Mr. DeCosta, the meeting was "tense" and Mr. Harman was "aggressive." Matthew McCloskey, who attended the meeting, described it as "hostile." Mr. Harman offered Mr. DeCosta the opportunity to invest in a discount funeral business that Mr. Harman was starting in Virginia Beach. When Mr. DeCosta did not respond quickly enough, the offer was abruptly withdrawn. Mr. Harman told Mr. DeCosta that he had missed his "window of opportunity" to go into business with Mr. Harman. Mr. Harman told Mr. DeCosta that if they were not going to work together, then Mr. Harman would compete against him as "Northern Virginia Funeral Choices." Mr. Harman said he liked the name "Northern Virginia Funeral Choices." Mr. DeCosta told Mr. Harman that he could not use the name "Northern Virginia Funeral Choices" because OTFC owned the rights to use the name. According to Mr. DeCosta, Mr. Harman laughed and said that Mr. DeCosta did not know what he was talking about.

Mr. DeCosta became concerned that Mr. Harman or others might be using his mark "choices" in connection with providing funeral services. In September 1998, Mr. DeCosta commissioned a trademark search of marks

using the term "choices" in connection with funeral services. Plaintiff's Ex. No. 10. He was advised by his attorney that his federally registered service mark of "Old Town Choices" would protect OTFC from another entity obtaining federal trademark or service mark protection for a mark using the word "choices" in connection with funeral services.

From September to December 1998, Mr. DeCosta reserved the corporate names of "Funeral Choices of Northern Virginia, Inc.," "Virginia Funeral Choices, Inc.," and "Tidewater Funeral Choices, Inc.," with the State Corporation Commission of Virginia (the "SCC"). Plaintiff's Ex. Nos. 15, 16, and 17. He never pursued incorporating businesses under those names, however, and the reservation of names eventually lapsed. Mr. DeCosta did not reserve the name "Northern Virginia Funeral Choices" with the SCC.

In November 1998, unbeknownst to OTFC, Mr. Harman incorporated "Northern Virginia Funeral Choices, Inc.," with the SCC. Defendants' Ex. No. 6. On December 22, 1998, Mr. Harman filed an "intent-to use" service mark application with USPTO for the name "Northern Virginia Funeral Choices." Plaintiff's Ex. No. 24. That application, which ultimately was not accepted by USPTO,[2] indicated that Mr. Harman was not then using the mark but intended to do so in the future. Although "Northern Virginia Funeral Choices, Inc.," was incorporated in November 1998, it did not start to do business until June 1999, after it was licensed by the Department of Health Professions to conduct funerals. Prior to that time, however, in January 1999, Mr. Harman began the process of obtaining the permits required to operate a crematory under the name "Northern Virginia Funeral Choices, Inc." In February 1999 he purchased his business's location in Chantilly, Virginia, and in Spring 1999 he commissioned a sign for the building with the name "Northern Virginia Funeral Choices."

On January 8, 1999, OTFC registered the service mark of "Northern Virginia Funeral Choices" with the SCC. In its application, OTFC stated that it first used the mark on October 1, 1997. In order to show active use of the name, OTFC advertised under the name "Northern Virginia Funeral Choices" in local newspapers in December 1998 and January 1999. Plaintiff's Ex. No. 13. The SCC accepted the registration and issued a Certificate of Registration to OTFC for the mark on January 25, 1999. Plaintiff's Ex. No. 12.

Mr. DeCosta first learned that Mr. Harman was using the mark "Northern Virginia Funeral Choices" in May 1999. Mr. DeCosta had invoiced Mr.

---

[2] The USPTO rejected the application in May 1999, after concluding that Mr. Harman's proposed use of "Northern Virginia Funeral Choices" was confusingly similar to OTFC's registered mark of "Old Town Choices."

Harman for OTFC's services in picking up a body at the airport and storing it for Mr. Harman's business. In payment for those services, OTFC received a check drawn on an account of "Northern Virginia Funeral Choices." Plaintiff's Ex. No. 18A. Mr. DeCosta later saw advertisements for "Northern Virginia Funeral Choices" that Mr. Harman's business placed in local publications. Plaintiff's Ex. No. 19.

Mr. DeCosta sent Mr. Harman a "cease and desist" letter. Plaintiff's Ex. No. 20A. Mr. Harman has continued to use the name "Northern Virginia Funeral Choices." Plaintiff's Ex. No. 21.

Mr. DeCosta stated that Mr. Harman's use of the name "Northern Virginia Funeral Choices" has caused confusion within the marketplace. He has received telephone calls from families with whom OTFC has worked in the past expressing confusion over the similarity of the names of Mr. DeCosta's and Mr. Harman's respective businesses. He has received bills for advertising placed by Mr. Harman's business. Plaintiff's Ex. No. 25A. OTFC's advertisements have run side by side with advertisements by Mr. Harman's business in some publications. Plaintiff's Ex. No. 26A.

In July 1999, Mr. Harman's attorney sent OTFC a "cease and desist" letter. Plaintiff's Ex. No. 23. This suit followed on July 23, 1999. OTFC's request for a preliminary injunction was denied on August 4, 1999.

## The Bill of Complaint

In its Bill of Complaint, OTFC alleges causes of action for service mark infringement under the Virginia Trademark and Service Mark Act of 1998, Code § 59.1-92.1 *et seq.*, and for common law unfair competition. OTFC seeks injunctive relief, damages, and attorney's fees. The defendants' cross-claim against OTFC was nonsuited at trial. No claim is made in this case that the defendants' use of the mark "Northern Virginia Funeral Choices" infringes on OTFC's federally registered service mark "Old Town Choices."

## Applicable Law

Section 59-1-92.4 of the Virginia Code permits one who is using[3] a service mark in the Commonwealth of Virginia to apply to register that mark with the SCC. The certificate of registration issued by the SCC for a service mark is "prima facie evidence of the registrant's ownership of the mark, and

---

[3]   Unlike federal service mark registration, Virginia has no provision for "intent-to-use" registration of marks.

the registrant's exclusive right to use the registered mark within the Commonwealth on or in connection with the goods or services specified in the certificate [of registration]." Code § 59.1-92.6.

Under Code § 59.1-92.2, a "service mark" is defined as "any word, name, symbol, or device or any combination thereof used by a person to identify and distinguish the services of such person from the services of others." Although often used interchangeably, the terms "trademark" and "service mark" differ in that trademarks generally refer to marks used in connection with the sale of goods and service marks are used in connection with the provision of services.

For the purposes of Virginia trademark or service mark registration, "use" is defined as the "bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in the mark." In the case of a service mark, "a mark shall be deemed to be in use . . . when it is used or displayed in the course of selling or providing services in this Commonwealth, or advertising descriptive of services available within this Commonwealth that is communicated within or into this Commonwealth." Code § 59.1-92.2.

The Code provides that nothing in the Virginia Trademark and Service Mark Act of 1998 "shall adversely affect the rights of the enforcement of common-law rights in marks." Code § 59.1-92.15. Common law rights to a mark are created by the first use of the mark. This concept has been aptly described as "a race to the marketplace." The first person to actually use a mark has a common law right to prevent others from using the mark or a confusingly similar mark, regardless of whether the subsequent user of the mark registers the mark. This common law protection for a mark is generally limited to the geographic market in which the mark is actually used. *See generally Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S. Ct. 357, 60 L. Ed. 713 (1916).

Under Code § 59.1-92.12, a person is liable for infringement of a Virginia-registered service mark if that person uses the mark in Virginia without the registrant's consent if "such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services." Code § 59.1-92.12. Remedies for infringement may include injunctions, disgorgement of profits, damages, and reasonable attorney's fees. Code § 59.1-92.13.

*Ownership of the Mark "Northern Virginia Funeral Choices"*

OTFC and Mr. Harman each claims to be the first to actually use the mark "Northern Virginia Funeral Choices." Mr. DeCosta claims that he first used the mark in the Fall of 1997, when distributed business cards and letterhead

with the name "Northern Virginia Funeral Choices." In addition, he claims use of the mark in the summer of 1998 when he had the tee shirts made and in August 1998 when OTFC filed the fictitious name certificate for "Northern Virginia Funeral Choices." Mr. Harman dates his use of the mark to November 1998 when he incorporated "Northern Virginia Funeral Choices, Inc.," with the SCC and set about obtaining the necessary permits and licensures to conduct cremations and funerals under the name "Northern Virginia Funeral Choices." Mr. Harman claims that Mr. DeCosta's use of the name "Northern Virginia Funeral Choices" before November 1998 was not bona fide, and did not prevent Mr. Harman from obtaining superior rights to the mark.

The Court concludes that Mr. DeCosta's business cards, letterhead, and tee shirts are not the kind of use of a mark that results in common law service mark protection. At best, they show an intention to use the mark. In 1997 and early 1998, the letterhead and business cards were distributed only to a small group of potential investors in Mr. DeCosta's planned business, rather than potential users of his future funeral business. The tee shirts were apparently never distributed beyond Mr. DeCosta and another employee of the business. While actual sales are not required to show use, actual use, beyond mere preparations, is required.

Similarly, OTFC's filing a fictitious name certificate for "Northern Virginia Funeral Choices" in August 1998 did not, standing alone, prevent others from using the name. There is no requirement that a fictitious or assumed name be distinguishable from any other trade name in use in Virginia. Any number of persons or entities can file a fictitious name certificate for the same assumed name.

Likewise, Mr. Harman's incorporation of Northern Virginia Funeral Choices, Inc., in November 1998 did not, standing alone, confer service mark protection on the name. A corporate name must be actually used as a trademark or a service mark before it enjoys trademark or service mark protection. The SCC does not reject a proposed corporate name because it is confusingly similar to another name. Instead, a corporate name need only be "distinguishable on the records" of the SCC. Code §§ 13.1-630(C), 13.1-829(B), 13.1-1012(C). Thus, Mr. DeCosta was able to reserve the corporate name of "Funeral Choices of Northern Virginia, Inc.," with the SCC in December 1998 although "Northern Virginia Funeral Choices, Inc.," had been incorporated a month earlier. Other than the bare incorporation of Northern Virginia Funeral Choices, Inc., in November 1998, Mr. Harman did not actually use the name until several months later.

The Court concludes that the first "use" of the mark "Northern Virginia Funeral Choices" occurred on December 18, 1998, when OTFC began to advertise its funeral services using that name. According to Code § 59.1-92.2, a service mark is used "when it is used or displayed in the course of selling or providing services in this Commonwealth, or advertising descriptive of services available within this Commonwealth that is communicated within or into this Commonwealth." Mr. DeCosta and OTFC "used" the name "Northern Virginia Funeral Choices" in its advertising in December 1998 and January 1999. OTFC was able to provide funeral services at that time. In other words, the services were "available" within the meaning of the statute.

Conversely, Mr. Harman's company, Northern Virginia Funeral Choices, Inc., was not able to provide funeral services until June 1999. That is when the company was first licensed to conduct funerals and when it first began to advertise under its corporate name. Mr. Harman's first "use" of the name "Northern Virginia Funeral Choices" occurred in June 1999. Before that time, his obtaining various licenses and permits under that name was no more than preparation to use the service mark, akin to Mr. DeCosta's ordering business cards, letterhead, and tee shirts. Mr. Harman's filing an "intent-to-use" application with the USPTO for the mark on December 22, 1998, evidences that Mr. Harman was not yet using the mark at that time.

Under federal law, the "intent-to-use" application results in the applicant's constructive use of the mark as of the date of filing, assuming the registration is later accepted by the USPTO. 15 U.S.C. § 1057(c). Mr. Harman is not able to claim December 22, 1998, as the date of his constructive use of the mark, because the application was not accepted by the USPTO. The USPTO found the mark confusingly similar to OTFC's registered mark for "Old Town Choices." Even if the "intent-to-use" application were accepted, the date of constructive use was after OTFC's first use of the mark on December 18, 1998.

By the time Mr. Harman began to use the mark "Northern Virginia Funeral Choices" in June 1999, OTFC had superior rights to the mark, both by OTFC's first use of the name and, more importantly, by its registering its service mark with the SCC. The certificate of registration issued to OTFC for its ownership of the mark "Northern Virginia Funeral Choices" on January 25, 1999, is "prima facie evidence of the registrant's ownership of the mark, and the registrant's exclusive right to use the registered mark within the Commonwealth on or in connection with the goods or services specified in the certificate." Code § 59.1-92.6. The defendants' evidence at trial did nothing to rebut the prima facie evidence of OTFC's ownership of the mark "Northern Virginia Funeral Choices."

## *Infringement*

Having concluded that OTFC owns the mark "Northern Virginia Funeral Choices," the Court must now determine whether Mr. Harman's and NVFC's use of the mark infringed on OTFC's mark.

Code § 59.1-92.12(1) defines infringement as the use of:

> Any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this chapter or prior law in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source or origin of such goods or services.

In addition, under Code § 59.1-92.12(2), any person may be liable for infringement if he or she:

> Reproduces, counterfeits, copies or colorably imitates a registered mark and applies such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in this Commonwealth in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive.

In determining whether a mark is "likely to cause confusion," courts typically consider several factors, including:

1. The visual, verbal, and intellective similarity of the marks;
2. The similarity of the class of goods or services in question;
3. The similarity of the markets;
4. The similarity of marketing media used;
5. The strength or weakness of the mark in question;
6. The defendant's intent; and
7. The evidence of actual confusion.

*See, e.g., HMH Publishing, Inc. v. Brincat,* 504 F.2d 713 (9th Cir. 1974); *Exxon Corp. v. Texas Motor Exchange of Houston,* 628 F.2d 500 (5th Cir. 1980); *Sara Lee Corp. v. Kayser-Roth Corp.,* 81 F.3d 455 (4th Cir. 1996).

Applying these well-established factors to the facts of this case, the Court concludes that the defendants' use of the mark "Northern Virginia Funeral Choices" is likely to cause confusion with OTFC's mark. First, the marks are not only similar, they are identical. Second, the marks are used for the same services, discount funeral services. Third, the market is the same, people desiring discount funerals in Northern Virginia. Fourth, the marketing media is similar and often identical, print advertising in regional Northern Virginia newspapers and newsletters.

The mark in question is a "suggestive" mark, which places it in the middle of the spectrum of marks from weakest to strongest. A mark is considered "strong" or "weak" depending on its uniqueness. For example, "funeral" is generic and is not protectable. "Northern Virginia" when applied to "funeral" is more descriptive, but it is still a weak mark that would not be protectable until it acquires a secondary meaning in the marketplace. Use of the word "choices" applied to funeral services is "suggestive" and protectable. A stronger mark is one that is "arbitrary" or "fanciful" such as "Apple" when applied to computers. The strongest marks are made-up names that are considered "unique" such a "Verizon" for telephone services or "Crestar" for banking services. What is distinctive about the mark is its use of the word "choices" when applied to funeral services.

The next factor to consider is the defendants' intent. "As a general rule, the plaintiff in an action for trademark infringement is not required to prove the defendant's intent. However, where such intent has been shown, the 'inference of likelihood of confusion is readily drawn'." *HMH Publishing Co. v. Brincat*, 504 F.2d at 720. *See also Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d at 465.

In this case, there was much evidence that the defendants deliberately infringed on OTFC's mark. Mr. Harman knew in the summer and fall of 1998 that Mr. DeCosta planned to use the word "choices" in connection with his funeral business. At the meeting at a restaurant in September or October 1998, Mr. Harman threatened to appropriate the name "Northern Virginia Funeral Choices" and go into business in direct competition with Mr. DeCosta. At that same meeting, Mr. DeCosta told Mr. Harman that OTFC owned the name "Northern Virginia Funeral Choices." After this meeting, Mr. Harman incorporated NVFC and filed an "intent-to-use" service mark application with the USPTO. Clearly, Mr. Harman acted with full knowledge of Mr. DeCosta's and OTFC's superior rights to the mark and with intent to infringe on OTFC's mark. By the time Mr. Harman first actually used the mark in June 1999, he knew that OTFC was actively using the mark.

Given that the defendants have been shown to have acted with intent to infringe, little evidence is needed of actual confusion. In this case, however, OTFC presented evidence of actual confusion in the marketplace over the two businesses both operating under the mark "Northern Virginia Funeral Choices."

In sum, the Court concludes that the defendants' use of the mark "Northern Virginia Funeral Choices" infringes on OTFC's ownership of that mark.

### *Remedies*

Having found that the defendants have infringed on OTFC's service mark for "Northern Virginia Funeral Choices," the Court will award the following relief:

1. The defendants (and, as applicable, their officers, agents, employees) will be permanently enjoined from using the mark "Northern Virginia Funeral Choices";

2. The defendants (and, as applicable, their officers, agents, employees) will be permanently enjoined from using the word "choices" in connection with providing funeral or cremation services in Virginia;

3. The defendants will destroy or surrender to this Court any and all infringing materials in their possession, including signs, brochures, advertisements, business cards, and letterhead;

4. The defendants will disconnect any of the defendants' telephone lines listed under the name of "Northern Virginia Funeral Choices" and arrange for any calls placed to such numbers to be forwarded by the telephone company to OTFC;

5. The defendants shall place corrective advertising in any publication in which NVFC has advertised under the name of "Northern Virginia Funeral Choices" since June 1999, which advertisements shall state that the defendants are not connected in any way with the plaintiff's business;

6. The defendants shall report to the Court within thirty days of the entry of the decree in this case setting forth how the defendants have complied with the terms of the injunction.

The Court will not order NVFC to disgorge its profits from its use of OTFC's service mark, because the evidence shows that the defendants have not yet profited from their infringement. The Court will not award OTFC any compensatory damages for the defendants' infringement of OTFC's service mark, because no evidence was introduced from which the Court could make a reasonable estimate of OTFC's damages. The Court has fully considered the

plaintiff's request for attorney's fees, including all supporting documentation and the defendants' opposition thereto. The Court will award the plaintiff $40,000.00 in attorney's fees.

*Appendix*

*Time Line*

October 14, 1997: DeCosta incorporates OTFC.

Fall 1997: DeCosta prints business cards and letterhead with "Northern Virginia Funeral Choices" name and distributes them to investors.

December 1997: DeCosta leaves SCI.

March 1998: OTFC is licensed to conduct funerals and conducts first funeral under name OTFC.

May 1998: OTFC registers "Old Town Choices" with USPTO.

June 1998: Harman leaves SCI.

Early Summer 1998: DeCosta has tee shirts made with "Northern Virginia Choices" logo.

August 7, 1998: OTFC files a fictitious name certificate for "Northern Virginia Funeral Choices" in Fairfax County.

Before August 31, 1998: DeCosta and Harman discuss possibility of going into business together.

August 31, 1998: Harman makes proposal to DeCosta for going into business together; DeCosta disagrees with proposal and does not respond.

September or October 1998: DeCosta, Harman, and others (including McCloskey) meet at restaurant. Harman says he will compete against DeCosta using "Northern Virginia Funeral Choices" name. DeCosta tells Harman that OTFC owns the name.

September 1998: DeCosta commissions a trademark search for any uses of "choices" in connection with funeral services.

September to December 1998: DeCosta reserves with SCC corporate names of "Funeral Choices of Northern Virginia, Inc.," "Virginia Funeral Choices, Inc.," and "Tidewater Funeral Choices, Inc."

November 18, 1998: Harman incorporates "Northern Virginia Funeral Choices, Inc."

December 18, 22, and 24, 1998: OTFC advertises under name "Northern Virginia Funeral Choices" in local publications.

December 22, 1998: Harman files an "intent-to-use" service mark application for "Northern Virginia Funeral Choices" with USPTO.

January 8, 1999: OTFC advertises under name "Northern Virginia Funeral Choices" in local publications.

January 8, 1999: DeCosta/OTFC applies to register service mark "Northern Virginia Funeral Choices" with SCC.

January 11, 1999: Harman obtains permit from DEQ to operate a crematory under name of "Northern Virginia Funeral Choices."

January 25, 1999: SCC issues certificate of registration to OTFC for service mark "Northern Virginia Funeral Choices."

March 21, 1999: Harman orders sign "Northern Virginia Funeral Choices;" sign is later installed at business location in Chantilly, Virginia.

May 13, 1999: USPTO rejects Harman's "intent-to-use" application for "Northern Virginia Funeral Choices," finding it confusingly similar to OTFC's registered mark "Old Town Choices."

Circa May 25, 1999: DeCosta/OTFC first learn that Harman is using name "Northern Virginia Funeral Choices."

June 9, 1999: Harman's company, Northern Virginia Funeral Choices, Inc., receives license to conduct funerals and, shortly thereafter, conducts its first funeral.

June 22, 1999: Harman places first advertisements for "Northern Virginia Funeral Choices" in local publications.

June 22, 1999: OTFC sends DeCosta a "cease and desist" letter re use of name "Northern Virginia Funeral Choices."

June 30, 1999 and July 6, 1999: Harman continues to advertise "Northern Virginia Funeral Choices" in local publications.

July 20, 1999: Harman sends DeCosta/OTFC a "cease and desist" letter re use of name "Northern Virginia Funeral Choices."

July 23, 1999: OTFC files Bill of Complaint.