## CIRCUIT COURT OF FAIRFAX COUNTY

Northern Virginia
Funeral Choices,
Inc., et al.

v.

Erie Ins. Co.,
t/a Erie Ins. Exch. etc.

March 21, 2003

Case No. (Chancery) 163598

BY JUDGE MICHAEL P. MCWEENY

This case came before the Court upon Cross-Motions for Summary Judgment. Prior to the hearing, the parties had agreed to an extensive Stipulation and to the procedure to be followed subsequent to the rulings by the Court. After oral argument, the motions were taken under advisement to allow further consideration of the memoranda and the underlying authorities. For the reasons set forth below, the Court now grants Summary Judgment (partial) to the Complainant and denies the Cross-Motion of the Defendant.

*Facts*

In July of 1999, Old Town Funeral Choices filed suit against Northern Virginia Funeral Choices, Inc., and Russell D. Harman requesting injunctive relief and damages for alleged trademark infringement and common law unfair

competition. The suit arose out of the actions of Mr. Harman in forming a competing business which incorporated the "funeral choices" label which was originated by the owners of Old Town to designate their form of affordable funeral and embalming services.[1]

At the time the suit was filed, Northern Virginia Funeral Choices, Inc., was insured by Erie Insurance Company under a Business Policy. A demand was made under the policy for Erie to defend and indemnify, which demand was rejected by Erie on several grounds. Accordingly, Northern Virginia Funeral Choices, Inc., incurred expenses for defense and ultimately paid the judgment entered against it. This suit for indemnity for the cost of defense and the amount of the judgment followed.

## Issue

The issue in the Cross-Motions for Summary Judgment is whether, under the provisions of the Business Policy, Erie Insurance Company had a duty to defend and/or indemnify Northern Virginia Funeral Choices, Inc., in the underlying case.

## Duty to Defend

The duty to defend is controlled by the interpretation of the insurance policy. The terms of the policy should be construed in light of their subject matter and the words "should be given their natural and ordinary meaning as understood in the business world." *London Guarantee & Acc. Co. v. C. B. White & Bros.*, 188 Va. 195 (1948).

In construing an insurance policy, the Virginia courts follow a combination of the Exclusive Pleading Rule and the Potentiality Rule. *Solers, Inc. v. Harford Mut. Ins. Co.*, 146 F. Supp. 2d 785 (E.D. Va. 2001). The former provides that the duty to defend is determined solely by the claims asserted in the pleadings, and the latter provides that the duty to defend is triggered if there is any "potentiality" that the allegations could state a claim covered by the policy. *Id.*; *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185 (1990). An insurer is relieved of the duty to defend "only when it clearly appears from the initial pleading the insurer would not be liable under the policy contract for *any* judgment based upon the allegations." *Reisen v. Aetna Life & Casualty Co.*, 225 Va. 327 (1983). All insuring provisions are

---

[1] Old Town Funeral Choices v. Northern Va. Funeral Choices, Inc., 55 Va. Cir. 459 (2000). [Reporter's Note]

construed broadly, and any ambiguity is construed liberally in favor of the insured and strictly against the insurer. *Solers, Inc., supra,* at 593.

The injury alleged in the underlying case is one for service mark or trademark infringement regarding the use of the term "funeral choices," a cause of action which Erie contends is not covered under the policy. The policy does cover "Advertising Injury," however. By the foregoing standards, in order to determine whether there is a duty to defend in the case at bar it first is necessary to find whether Service Mark or Trademark Infringement constitutes an "Advertising Injury" covered by the policy.

### Advertising Injury

Although there is some guidance from the federal courts, whether service mark or trademark infringement constitutes an "advertising injury" as defined in a commercial general liability insurance policy is a case of first impression in the Commonwealth. The first step in the analysis, therefore, is to examine the language of the policy.

"Advertising injury" means injury arising out of:

> 1. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> 2. Oral or written publication of material that violates a person's right of privacy;
> 3. Misappropriation of advertising ideas or style of doing business; or
> 4. Infringement of copyright, title or slogan.

(Policy, Definitions.)

Erie contends that this language does not include service mark or trademark infringement and that such infringement would not be a "qualifying offense" under the coverage. In asserting this position, it relies upon the interpretation found in *Advance Watch Co. v. Kemper National Ins.,* 99 F.3d 197 (6th Cir. 1996), and its progeny. In *Advance Watch,* the Sixth Circuit stated "recognition of trademark and trade dress infringement as a distinct category of actionable conduct is so common that the only reasonable assumption is that if [an insurer] had intended to provide coverage for such liability, the insurer would have referred to it by name in the policy, as it did in the case of 'infringement of copyright, title, or slogan'." *Id.* at 803. Three years later, they expanded on their reasoning, holding that service marks and

trademarks were not artistic works and, since the word "title" ordinarily applies to a non-copyrightable title of a book, film, or other artistic work, they could not be the subject of an "infringement of copyright, title, or slogan." *ShoLodge, Inc. v. Travelers Indem. Co. of Ill.*, 168 F.3d 256 (6th Cir. 1999).

This entire line of cases and their reasoning has been the subject of much criticism, most notably in the *American Law Reports* article on Advertising Injury Insurance, 98 A.L.R. 5th 1 (2003), in which they were described as having questionable precedential value. In addition, the Seventh Circuit considered the *Advance Watch/ShoLodge* holdings and expressly rejected the reasoning, finding that the term "infringement of copyright, title, or slogan" was broad enough to encompass a claim of trademark infringement. *Charter Oak Fire Ins. Co. v. Hedeen & Co.*, 280 F.3d 730 (7th Cir. 2002). This appears to be the more modern and majority rule, at least within the federal judiciary.

It may be argued in light of the split of authorities among the Circuits that the term "advertising injury" is ambiguous. "Where two constructions [of a policy term] are equally possible, that most favorable to the insured will be adopted." *St. Paul Ins. v. Nusbaum & Co.*, 227 Va. 407, 411 (1984). Virginia law views any such possible ambiguity in favor of coverage.

A second line of cases also considers service mark and trademark infringement to be an advertising injury, but for different reasons. These cases have found this cause of action to fall within the third definition, "misappropriation of . . . style of doing business." The theory is that one's mark and name is an integral part of an entity's "style of doing business" and thus an "infringement" of a trademark is a "misappropriation" of the style of doing business. See *American Employers Ins. v. DeLorme Publishing*, 39 F. Supp. 2d 64 (D. Me. 1999); *Bay Elec. Supply, Inc. v. Travelers Lloyds Ins. Co.*, 61 F. Supp. 2d 611 (S.D. Tex. 1999).

Finally, as a service mark or trademark is used to identify a specific service or product and is publicized for that purpose, logic compels the conclusion that advertising of the appropriated mark is the source of any damage arising out of the appropriation of the mark. The Court finds that service mark or trademark infringement is a "qualifying offense" under the definition of "advertising injury" as set forth in the policy.

## Exclusions

Even if there is a qualifying offense, there may be a relevant exclusion under the policy which relieves the insurer from a duty to defend. In its papers, Erie asserts that there are two such exclusions applicable to the case at

bar: (1) The claim is precluded by the insured's failure to comply with the policy's notice of claim condition, and (2) The claim is precluded under the policy's first publication exclusion. The additional claim that coverage was excluded for "intentional acts" was raised for the first time during oral argument.

Under Virginia law, exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies. *Johnson v. Ins. Co. of North Am.*, 232 Va. 340 (1986). The exclusions will be examined in turn.

## A. *Notice*

While not technically an "exclusion," the policy, "Conditions — Section II," contains the notice provision. "When there is an accident, occurrence, offense, claim, or suit, anyone we protect will: a. notify us or our Agent in writing as soon as possible. . . ." The term "as soon as possible" has been interpreted as meaning "within a reasonable time after an incident giving rise to a claim," and what constitutes a reasonable time depends upon the facts of the case. *State Farm Fire & Casualty Co. v. Scott*, 236 Va. 116 (1988). An "occurrence" which gives rise to a duty of notice means an "incident which was sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages covered by [the] policy." *State Farm Ins. v. Walton*, 244 Va. 498 (1992).

The Stipulation reveals that Northern Virginia Funeral Choices, Inc., received a "cease and desist" letter from Old Town Funeral Choices on June 22, 1999. This clearly constituted an incident sufficient to cause belief that there may be a claim for damages under the policy. Following the issuance of the cease and desist letter, the Bill of Complaint was filed and served on Northern Virginia Funeral Choices, Inc. Erie received the notice of claim on September 1, 1999, after the response to the suit had been filed. On September 28, 1999, Erie denied the request to defend on the grounds that the claim was not covered by the policy, that the claim fell under the first publication exclusion, and on the basis of the notice of claim condition. There was no other claim of prejudice to Erie at the time of the denial. The case did not go to trial until December 20, 1999.

Under the facts of this case, even if the delay in notice can be argued to be substantial, it is not material. Erie does not rely on nor claim any prejudice from the late notice. The stipulated facts reflect that Erie could have participated in all stages of the proceedings. This total absence of prejudice is to be considered on the issue of materiality. *State Farm Fire & Cas. v. Scott, supra*, at 120.

The Court finds that the late notice to Erie does not relieve it of its duty to defend in the underlying suit.

## B. *First Publication Exclusion*

The next exclusion states: "We do not cover . . . advertising injury arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." Erie contends that while the policy period commenced January 27, 1999, Northern Virginia Funeral Choices, Inc., first publicized the "offending mark" by incorporating under that name on November 11, 1998. In addition, it proceeded to file an "intent to use" application with the State Corporation Commission, applied for permits, and filed an application with the Patent and Trademark Office, all prior to January 27, 1999. Accordingly, Erie asserts that there was no duty to defend as the alleged advertising injury falls within the First Publication Exclusion. The Court does not agree.

The terms "advertising" and "publication" must be read together. While the use of the service mark or trademark in filing of Articles of Incorporation and applying for permits may fall within a legal definition of "publication," this is not the type of publication contemplated under the exclusion. In applying the "natural and ordinary meaning" standard to the clause, it is clear that an advertising injury can only arise out of a publication relating to advertising. Although the term "advertising" has been the subject of many state and federal court opinions, this Court adopts the definition of the *Solers* case in which the term was found to refer to the "widespread distribution of promotional material to the public at large, or at least to widely disseminated solicitation or promotion." *Solers, Inc., supra*, at 793. The first publication meeting this definition in the case at bar did not occur until June 1999, well after the beginning of the policy period. (See Stipulation Exhibit 8.)

For these reasons, the Court finds that the First Publication Exclusion does not apply.

## C. *Intentional Act*

The last exclusion upon which Erie now wishes to rely is an exclusion for liability for intentional acts of the insured. While the Court could engage in an analysis of what type of "intent" would raise the specter of this exclusion under a claim of trademark infringement, such an analysis is unnecessary. Erie did not rely upon this exclusion in its denial letter of September 28, 1999, nor did it raise it in the Motion for Summary Judgment or its memoranda. The

Court finds the argument to be untimely and any defense under this exclusion has been waived.

*Insurer's Obligation*

The policy in question provides, in part: "We will pay: b. expenses incurred to investigate and defend or settle as we believe proper any claim or suit against anyone we protect for damages covered under this policy." This is in addition to the limits of protection provided in the Declarations.

The Court finds that the underlying Bill of Complaint stated a cause of action for advertising injury, that no exclusions apply, and that sufficient notice was given the insurer to activate the provisions of the policy. Despite the request of Northern Virginia Funeral Choices, Inc., Erie declined to defend the case. Accordingly, Erie is liable for the costs of the defense and the amount of the judgment rendered. Upon the stipulated facts, partial summary judgment is granted to the Complainant and summary judgment is denied to the Defendant. As agreed, the parties now are to submit documents and affidavits to allow the Court to determine the amount of the attorney's fees and expenses incurred in the defense of the underlying suit.